DECISION AND JUDGMENT ENTRY
{¶ 1} Santosh R. Nayar was convicted of two counts of retaliation, violations of R.C. 2921.05, stemming from two separate incidents in which he threatened to murder the assistant Prosecuting Attorney who had prosecuted Nayar for public indecency. In this appeal, Nayar raises six assignments of error. First, Nayar argues that the evidence was insufficient to convict him of retaliation because he could not have reasonably expected his threats to be communicated to the victim, because one of the threats was not taken seriously by one individual who heard it, and because the threat was not precipitated by the victim's involvement in a proceeding against him. However, Nayar made his threats in public in front of individuals who testified that they believed his threats were genuine, and Nayar himself told investigators that he threatened the *Page 2 
victim because the prosecutor had charged Nayar with a crime. Therefore, there was sufficient evidence to submit the case to the jury.
 {¶ 2} Second, Nayar argues that the conviction was against the manifest weight of the evidence. However, we cannot say that the evidence weighs heavily against conviction. Almost all of the evidence introduced at trial tended to show that Nayar had threatened a public official because of his involvement in a criminal proceeding against Nayar and that Nayar could have reasonably expected that his threat would be communicated to the victim.
 {¶ 3} Third, Nayar argues that the trial court abused its discretion when it cut short his cross-examination of several prosecution witnesses. We reject this argument because the record demonstrates that the trial court had cautioned Nayar to continue questioning the witness before it ended his cross-examination, and Nayar nonetheless continued to delay.
 {¶ 4} Fourth, Nayar argues that his court-appointed counsel was ineffective because he failed to subpoena multiple witnesses for his defense. However, the record does not indicate who these witnesses would be or how they would aid his defense. Thus, Nayar has failed to overcome the presumption that his counsel acted competently.
 {¶ 5} Fifth, Nayar argues that the trial court abused its discretion in denying his motion for a continuance. However, because Nayar delayed in making his motion until the morning of trial, a continuance would have unjustifiably inconvenienced the court, the State, the witnesses, and the potential jurors. Thus, we cannot say the trial court acted arbitrarily, unreasonably, or unconscionably in denying the motion. *Page 3 
 {¶ 6} Finally, Nayar argues that the trial court erred in imposing his sentences because it did not make factual findings or consider the statutory guidelines. However, the trial court was not required to make factual findings when imposing a sentence within the statutory limits. Moreover, the record discloses that the trial court considered the appropriate sentencing factors. Because we find no merit to his assignments of error, we affirm Nayar's conviction and sentence.
 I. FACTS {¶ 7} A Lawrence County jury found Santosh R. Nayar guilty of two counts of retaliation, violations of R.C. 2901.05 and third-degree felonies. His convictions stemmed from two separate incidents in which Nayar threatened to murder assistant Lawrence County Prosecuting Attorney Mack Anderson. Anderson had participated in the prosecution of Nayar following his arrest for indecent exposure and disorderly conduct. The prosecution resulted in the impoundment of Nayar's car.
 {¶ 8} According to the testimony of Jeff Harmon, Nayar entered a Domino's Pizza restaurant in Ironton, Ohio, on October 5, 2006. Harmon stated that Nayar approached him asking for food and money. Harmon further testified that Nayar explained that he needed the money to release his car from impoundment following his arrest for masturbation in public. Harmon described the situation: "[Nayar] started getting a little wiry, a little agitated and started talking about his car, if he didn't get his car back, he was going to become a murderer by murdering Mack Anderson." Harmon testified that Nayar was not singing at the time. When Harmon refused to give Nayar money, Nayar left. After Harmon received his order, he returned to his nephew's house, looked up Anderson's telephone number, and called Anderson to warn him that Nayar *Page 4 
had "threatened to murder him." At Anderson's request, Harmon went to the Ironton Police Department and filled out a report.
 {¶ 9} As a result, Patrolman Steven T. Wilson of the Ironton Police Department arrested Nayar, who was waiting outside of the Lawrence County Sheriffs Office to visit an inmate. After Wilson took Nayar into the Sheriffs Office for booking, Wilson read Nayar his Miranda rights and began to question him. In the presence of several witnesses who testified at trial, Wilson asked Nayar: "Why did you threaten Mack Anderson?" According to Wilson, Nayar responded that it was "[b]ecause he signed false indictments against me." However, following this statement, Nayar denied having threatened Anderson.
 {¶ 10} The second count of retaliation stems from an incident that occurred a few days later on October 10, 2006, when Nayar was in a holding cell at the Lawrence County Municipal Court. Deputy Jerry McDaniels entered through the back door, and Nayar called out to him. McDaniels testified that he asked Nayar why he was in the cell, and Nayar stated: "They say I threatened to kill Mack Anderson. That's not a threat, that's a promise." Although McDaniels chose not to file a charge, Deputy Brian Chaffins overheard this statement and filed a report. Chaffins testified that he believed Nayar was making a serious statement: "His demeanor didn't seem like it was a joking matter to me. It seemed like he was fairly serious." Nonetheless, Chaffins waited a week to file his affidavit.
 {¶ 11} At his jury trial, Nayar chose to represent himself over the admonitions of the trial court. However, the court required Nayar's court-appointed attorney to sit with *Page 5 
and advise him. The jury found Nayar guilty of both counts, and the trial court sentenced Nayar to concurrent four-year sentences. Nayar now brings this appeal.
 II. ASSIGNMENTS OF ERROR {¶ 12} Nayar presents the following six assignments of error:
 "1: The State of Ohio failed, as a matter of law, to prove or produce evidence on all essential elements of the crime of retaliation.
 "2. The jury verdicts finding the Defendant guilty of two counts of retaliation were against the manifest weight of the evidence.
 "3. The Trial Court, abused its discretion, [sic] when it denied the Defendant the right to fully examine the State's witnesses.
 "4. The Defendant received ineffective assistance of counsel when counsel failed to subpoena witnesses needed for the Defendant's case.
 "5. The Trial Court abused its discretion when it denied the Defendant's request to continue the trial.
 "6. The Trial Court erred as a matter of law by failing to sentence the Defendant as required under Ohio law."
 III. SUFFICIENCY OF THE EVIDENCE {¶ 13} In his first assignment of error, Nayar argues that the State failed to produce sufficient evidence of each element of the crime to allow the trial court to submit the case to the jury. Our standard of review is familiar: "[w]hen reviewing the sufficiency of the evidence supporting a criminal conviction, an appellate court's role is to examine the evidence admitted at trial to determine whether the evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Simms,165 Ohio App.3d 83, 2005-Ohio-5681, at ¶ 9 (quoting State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the *Page 6 
prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. Our evaluation of the sufficiency of the evidence raises a question of law and does not permit us to weigh the evidence. Id. (citing State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717).
 {¶ 14} The elements of the crime of retaliation are found in R.C.2921.05, which provides:
 (A) No person, purposely and by force or by unlawful threat of harm to any person or property, shall retaliate against a public servant, a party official, or an attorney or witness who was involved in a civil or criminal action or proceeding because the public servant, party official, attorney, or witness discharged the duties of the public servant, party official, attorney, or witness.
 * * *
 (C) Whoever violates this section is guilty of retaliation, a felony of the third degree.
Thus, it was the State's burden to prove that Nayar (1) purposefully, (2) by unlawful threat of harm to any person, (3) retaliated against a public servant or attorney (4) because that person discharged his duties in a criminal proceeding.
 {¶ 15} Nayar cites State v. Farthing, 146 Ohio App.3d 720,2001-Ohio-7077, at ¶ 16, for the proposition that, "`the defendant [must be] either aware that the threats would be communicated to the intended victim by the third person or could reasonably have expected the threats to be so conveyed,' [to be] guilty of the type of unlawful threat of harm required by the retaliation statute." Id., quoting State v.Lambert (June 5, 1998), Montgomery App. No. 16667, unreported. According to Nayar, because Harmon and Nayar did not know each other, and because Harmon did not know Anderson, it was not reasonable for Nayar to expect that Harmon would communicate the threat to Anderson. Nayar's reliance on Farthing is misplaced. In Farthing, prison authorities *Page 7 
learned of an inmate's desire to rape his parole officer after they intercepted his letter to a friend with whom the inmate was accustomed to sharing confidences. The Second District concluded that, because the inmate had no reason to expect his friend to communicate the threat to the parole officer and had no reason to expect that his letter would be opened by prison authorities, the inmate had no reason to expect the threat to be conveyed to the parole officer. In contrast toFarthing, Nayar made his threat loudly in a public place to a stranger with whom he did not share a confidential relationship. Applying an objective standard, we conclude that Nayar should have reasonably expected his threat to be communicated to the victim.
 {¶ 16} Nayar also argues that the State failed to establish that Nayar reasonably could have expected Deputy McDaniel to communicate the second threat to Anderson. Moreover, according to Nayar, there is no evidence that this second threat was ever communicated to Anderson. The State does not respond to Nayar's argument. Although Nayar appears correct that the State failed to produce any evidence that the threat was communicated to Anderson, it does not appear that R.C. 2921.05(A) requires the threat to be communicated, directly or indirectly, to the victim of retaliation. The Third District has explained that the purpose of the retaliation statute is "to protect the sanctity of the judicial process and those that participate within it." State v. Fuqua, 3rd Dist. No. 6-02-01, 2002-Ohio-4697, at ¶ 20. To threaten retaliation against a public official affects the administration of justice as well as those who work within the civil and criminal justice system. Therefore, we hold that R.C. 2921.05(A) criminalizes the act of *Page 8 
threatening to harm another with the purpose of retaliating against a public official regardless of whether the threat is communicated to the victim.
 {¶ 17} Accordingly, if Nayar should have reasonably expected that his threat would be communicated to Anderson, he has made the type of threat criminalized by the retaliation statute. State v. Farthing,146 Ohio App.3d 720, 2001-Ohio-7077, at ¶ 16. Here, Nayar made a threat against a public official to a law enforcement officer in a government building. This threat was heard by at least two people. We conclude Nayar should have reasonably expected that doing so would result in that threat being passed along to Anderson. Therefore, there is sufficient evidence of this element of the crime.
 {¶ 18} Next, Nayar argues that the State failed to establish that the threats made against Anderson were precipitated by Anderson's involvement in a civil or criminal action against Nayar. His argument is meritless. Although Anderson testified that he was not the prosecutor who signed the original charge against Nayar, as Nayar had mistakenly believed, Anderson prosecuted the case in court. Harmon testified that Nayar spoke to him about that criminal charge, as well as the resulting impoundment of his car, immediately before threatening Anderson. Moreover, after being arrested, Nayar admitted to the police that he had threatened Anderson because of Anderson's involvement in the case. The second threat was a reiteration of the first threat, and it therefore reasonably could be viewed as connected to the purpose to retaliate. Thus, viewing the evidence in the light most favorable to the State, as we must, we conclude that the State established that it was Anderson's connection to the prosecution of the *Page 9 
charges of public indecency and disorderly conduct that precipitated Nayar's threats of harm.
 {¶ 19} Asserting that his threat was not serious, Nayar argues the State failed to establish that he had unlawfully threatened Anderson's life. He argues that neither Deputy McDaniel, who never reported the threat, nor Deputy Chaffin, who waited a week before filing an affidavit charging Nayar with retaliation, took it seriously. However, putting aside McDaniel's failure to report the threat, Chaffin testified that he took the threat seriously and that he delayed filing the report because Nayar was already in custody. In fact, Chaffin stated it "didn't seem like it was a joking matter * * * [H]e was fairly serious." Viewing the evidence in the light most favorable to the State, we conclude there was sufficient evidence to establish that Nayar's threat to murder Anderson was serious enough to be criminal in nature, rather than being mere posturing, "hot air," or "blowing off steam."
 {¶ 20} The State presented sufficient evidence, if believed, that would convince the average mind of Nayar's guilt beyond a reasonable doubt. We overrule Nayar's first assignment of error.
 IV. WEIGHT OF THE EVIDENCE {¶ 21} In his second assignment of error, Nayar asserts that his conviction is against the manifest weight of the evidence. We have recently explained the standard of review for this claim:
 "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." State v. Thompkins (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, *Page 10 
weigh the evidence and consider the credibility of witnesses. The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. See State v. Issa (2001), 93 Ohio St.3d 49, 67, 752 N.E.2d 904; State v. Thomas (1982), 70 Ohio St.2d 79, 80, 434 N.E.2d 1356; State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. Once the reviewing court finishes its examination, the court may reverse the judgment of conviction only if it appears that the fact finder, in resolving conflicts in evidence, "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Thompkins, 78 Ohio St.3d at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 If the prosecution presented substantial evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence. See State v. Eey (1978), 56 Ohio St.2d 169, 383 N.E.2d 132, syllabus. A reviewing court should find a conviction against the manifest weight of the evidence only in the "exceptional case in which the evidence weighs heavily against conviction." Thompkins, 78 Ohio St.3d at 387, quoting Martin, 20 Ohio App.3d at 175); see also, State v. Lindsey (2000), 87 Ohio St.3d 479, 483, 721 N.E.2d 995.
State v. Brooker, 4th Dist. No. 06CA19, 170 Ohio App.3d 570,2007-Ohio-588, at ¶ 16-17. {¶ 22} Basically, Nayar's argument is that there was no evidence that would allow the jury to conclude Nayar reasonably expected his threats would be communicated to Anderson by Harmon, McDaniel, and Chaffin. As noted above, however, there is substantial evidence to establish each element of the crime of retaliation. Harmon testified that Nayar threatened to murder Anderson, that this threat was made in a public place, and that he took the threat seriously. Nayar should reasonably have expected the threat would be communicated to Anderson because of the threat's serious nature and because Anderson was easily identifiable from Nayar's statements. Regarding the second threat, Nayar should also have reasonably expected that a *Page 11 
serious threat to murder a public officer made to law enforcement officials would be communicated to that public official. Nayar argues that "[t]here is little evidence [that] this threat was taken seriously." However, Chaffin specifically testified that he took the threat against Anderson seriously and that Nayar did not appear by his demeanor to be joking. Chaffin testified that he delayed filing a report on the threat because Nayar was already in custody and was not posing an "immediate threat." Moreover, there was evidence that Nayar admitted threatening Anderson because of Anderson's participation in prosecuting Nayar. Finally, there is not much evidence favorable to Nayar to weigh against the State's case. Based on the state of the record, we cannot conclude that the evidence "weighs heavily against conviction" or that the jury clearly lost its way. Thompkins, 78 Ohio St.3d at 387. For this reason, we overrule Nayar's second assignment of error.
 V. RIGHT OF CROSS-EXAMINATION {¶ 23} Next, Nayar argues that the trial court abused its discretion when it cut off his cross-examination of several prosecution witnesses. We review the trial court's decision limit the extent of cross-examination for the abuse of discretion: "`Cross-examination of a witness is a matter of right, but the "extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court."'" State v. Brinkley, 105 Ohio St.3d 231,2005-Ohio-1507, at ¶ 109, quoting State v. Green (1993),66 Ohio St.3d 141, 147, 609 N.E.2d 1253, quoting in turn Alford v. United States
(1931), 282 U.S. 687, 691, 51 S. Ct. 218, 75 L. Ed. 624. The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary, or unconscionable. See State v. Montgomery (1991),61 Ohio St.3d 410, 413, *Page 12 575 N.E.2d 167, quoting State v. Adams (1980), 62 Ohio St.2d 151, 157,16 O.O.3d 169, 173, 404 N.E.2d 144, 149.
 {¶ 24} "The exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." State v. Rapp (4th. Dist. 1990), 67 Ohio App.3d 33,36, 585 N.E.2d 965. Nonetheless, "[t]he trial judge retains wide latitude to impose reasonable limits on cross-examination based on concerns about harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Id. Reviewing the record as a whole, we believe the trial court gave Nayar ample opportunity to cross-examine each State witness. Nayar, however, over and again asked repetitive, confusing, and seemingly irrelevant questions. Moreover, despite many warnings by the trial court, Nayar used the cross-examination of witnesses to make statements about the case rather than to ask questions. The trial court repeatedly instructed Nayar to ask questions, and, outside the jury's presence, it specifically warned Nayar that if he did not stop making comments and asking questions that had been answered multiple times, it would end his cross examination. Furthermore, each time the trial court ended Nayar's cross-examination, Nayar had already stopped asking questions and, according to the State, appeared to have none left. The trial court warned Nayar that if he did not resume his questioning, the court would consider cross-examination concluded. Reviewing the record as a whole, it cannot be said that the trial court exceeded its discretion in stopping Nayar's questioning. We overrule his third assignment of error. *Page 13 
 VI. INEFFECTIVE ASSISTANCE OF COUNSEL {¶ 25} Next, Nayar argues that trial counsel provided ineffective assistance by failing to subpoena witnesses that Nayar wanted to testify. At trial, Nayar stated that he had asked his attorney about his witnesses, and his attorney had replied "What witnesses?" However, Nayar's attorney informed both Nayar and the trial court that "[j]ust about everybody that [Nayar] requested is already subpoenaed for today except Jeannine Reed, and I've talked with her and she wouldn't help you." Nayar replied that "I don't know if she'll help me * * * All I said is I sang the song Story of My Life, I Don't Want to Be a Murderer about five to ten times to Jeannine." On the second day of trial, Nayar also stated that he had requested 18 witnesses to be subpoenaed. However, Nayar admits that he made no proffer of who they were or to what these witnesses would have testified.
 {¶ 26} As the Supreme Court of Ohio has recently explained:
 [i]n evaluating claims of ineffective assistance of counsel, a two-step process is used. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial * * *." Strickland v. Washington (1984), 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus.
 {¶ 62} On the issue of counsel's ineffectiveness, the petitioner has the burden of proof because in Ohio, a properly licensed attorney is presumed competent. Calhoun, 86 Ohio St.3d at 289, 714 N.E.2d 905, citing Vaughn v. Maxwell (1965), 2 Ohio St.2d 299, 31 O.O.2d 567, 209 N.E.2d 164. In order to overcome this presumption, the petitioner must submit sufficient operative facts or evidentiary documents that demonstrate that the petitioner was prejudiced by the ineffective assistance. State v. Davis (1999), 133 Ohio App.3d 511, 516, *Page 14 728 N.E.2d 1111. To demonstrate prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. 2052, 80 L.Ed.2d 674.
State v. Gondor, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, at ¶ 60-61. {¶ 27} Nayar stated at trial that he wanted Jeannine Reed to testify to the fact that he had sung "Story of My Life, I Don't Want to Be a Murderer" to her multiple times. Nayar does not make clear why he wanted that testimony in the record, although presumably this testimony related to his statement to Harmon that he did not want to become a murderer, the threat that is the basis of the first charge of retaliation. In any case, Nayar was able to get evidence that he sang that song into the record through Scott Williams, a correctional officer at the Lawrence County Sheriff's Office. Williams testified that he had heard Nayar sing "Story of My Life, I Don't Want to Be a Murderer" multiple times. Thus, assuming that this evidence was relevant as explaining his statement to Harmon, it nonetheless appears that any prejudice to Nayar was minimized.
 {¶ 28} At trial, Nayar did not identify any other witnesses that he would have called to the stand, nor did he explain how their testimony could have helped him. Thus, assuming that his trial counsel was ineffective, Nayar failed in his burden to demonstrate that he was in any way prejudiced by the failure to subpoena any witnesses. In his brief, Nayar acknowledges the record does not contain an explanation of who these witnesses were and what their testimony would have been, but he requests leniency because he chose to represent himself at trial. We afford considerable leniency to pro se litigants. See In re Estate ofPallay, 4th Dist. No. *Page 15 
05CA45, 2006-Ohio-3528, at ¶ 10. Our reasoning has been that "it is preferable to hear cases on their merits than to dismiss them for minor technicalities." Id. However, this rule has limits, and we have consistently held that we are not required "to find substance where none exists, to advance an argument for a pro se litigant or to address issues not properly raised." Id. There is no evidentiary basis in the record for this Court to conclude that Nayar was prejudiced by the purported failure to subpoena witnesses. A direct appeal is not the proper mechanism to raise issues of ineffective assistance that do not appear in the record. Because Nayar has failed to overcome the presumption that his trial counsel acted competently, we must overrule his fourth assignment of error.
 VII. REQUEST FOR A CONTINUANCE {¶ 29} Nayar argues that in light of his need for additional time to subpoena witnesses and to prepare to represent himself, the trial court abused its discretion in denying his request for a continuance. We review the denial of a continuance for the abuse of discretion.State v. Jones, 91 Ohio St.3d 335, 342, 2001-Ohio-51, 744 N.E.2d 1163. As we noted above, "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary, or unconscionable.
 {¶ 30} The Supreme Court of Ohio has laid out a series of factors for trial courts to consider in evaluating a motion for a continuance. They include:
 the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case. *Page 16 
State v. Unger (1981), 67 Ohio St.2d 65, 67-68 423 N.E.2d 1078.
{1131} Nayar made his motion for a continuance on the morning of trial. We have previously held that a trial court does not abuse its discretion in denying a motion for a continuance requesting additional time to prepare on the morning of trial when the defense was aware of all of the facts and circumstances of the case several days before trial. State v. Cobb, 4th Dist. No. 06CA3076, 2007-Ohio-1885, at ¶ 15;State v. Goode, 2nd Dist. No. 01-CR-1042, 2003-Ohio-4323, at ¶ 14; Statev. Owens (1992), 81 Ohio App.3d 412, 415, 611 N.E.2d 369. Moreover, Nayar created the need for a continuance; he requested to represent himself and a continuance on the day of trial, despite the fact that his court-appointed counsel was present and presumably prepared for the case. Counsel represented to the trial court that Nayar had "expressed this wish [to represent himself] to me on several occasions. This is not a spur of the moment decision on his part." The State was prepared for the case, the trial court noted that the case had "been on the docket for some substantial length of time," the potential jurors had been called to court, and the State's eight witnesses were present, including one from out of State. Each of these facts weighs against the granting of a continuance. It does not appear that the trial court acted arbitrarily, unreasonably, or unconscionably in denying Nayar's motion for a continuance. Therefore, we overrule his fifth assignment of error.
 VIII. SENTENCING {¶ 32} Finally, Nayar argues that the record does not support his sentence of four years in prison for the two counts of retaliation. Before we can address the substance of that contention, we must decide what standard of review is appropriate. At least one *Page 17 
commentator has suggested that the abuse of discretion standard contained in Foster at the seventh syllabus and at ¶ 100 has very limited application. See Griffin Katz, Ohio Felony Sentencing Law (2007 Ed.) at § 10:20, et seq. Professor Katz contends that the standard of review "remains governed by R.C. 2953.08(G)(2)," which contains the "clearly and convincing" standard concerning "findings" and the "contrary to law" standard concerning the courts application of the statute's mandated analytical process. Our reading of Foster, which is controlling upon us regardless of its persuasiveness to the commentators, convinces us that the review of sentencing decisions now requires us to apply a "hybrid" standard of review. AfterFoster, there are still procedural steps or analytical processes the trial court must follow, e.g., the court must consider R.C. 2929.11
(purposes of felony sentencing) and R.C. 2929.12 (seriousness and recidivism factors). Failure to do so amounts to reversible error regardless of whether considered to be "contrary to law" or a "process flaw" under the abuse of discretion standard. See Harsha, The Substance of Appeals: Standards of Appellate Review, Ohio Lawyer, November/December 2003, at 17 (explaining that courts have no discretion to apply an improper analysis even where they have discretion in the ultimate choice or result on the merits).
 {¶ 33} Thus, we afford the trial court no deference in its application of the statutory analytical requirements that survive Foster. However, in conjunction with Foster's mandate, we afford trial courts the most deferential review in their ultimate decisions about the length of sentences if they have applied the proper analysis in reaching those decisions. See State v. Davis, 2007-Ohio-3944, ¶ 41, et seq., and Harsha, The Substance of Appeals, supra. *Page 18 
 {¶ 34} Nayar contends that "the record does not reflect the Trial Court made any of the necessary inquiries or findings in support of its imposition of the prison sentence handed down." Nayar also complains that the trial court "offered no reasoning in support of its determination" and points out that the prosecution recommended only a two-year prison term. However, the trial court was not required to make express factual findings before sentencing Nayar. As the Supreme Court of Ohio has held, "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Foster, supra, at ¶ 100.
 {¶ 35} Nonetheless, as we have already indicated, trial courts must still consider R.C. 2929.11 and R.C. 2929.12 before imposing a sentence within the authorized statutory range. Id. at ¶ 105; see also State v.Mathis, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, at ¶ 38.
 {¶ 36} Contrary to Nayar's assertion, the trial court did explain its reasoning for imposing the concurrent four-year sentences, stating:
 The Court having considered statement of Defendant, statement of counsel, purposes and principles of sentencing statutes, seriousness and recidivism factors contained therein.
 Mr. Nayar, it appears from your indication that you are the unfortunate victim of circumstance. That's what you said. It appears you would not harm a fly, you tell me.
 * * *
 You know, it's interesting that the people in Illinois think differently. Because obviously there you were charged with theft, aggravated assault, theft again, telephone harassment, communication with detained witnesses, criminal trespass to land, trespass to a residence in Wheaton, Illinois, but of course, you've never had any problems. And domestic violence in Illinois, as well as an assault, but of course you've never had *Page 19 
any troubles. Criminal trespass to a building. That's all just Illinois. Trouble seems to follow you. I'm sure it's never your fault.
 * * *
 The same thing I noticed is that Georgia seems like trouble follows you as well and there is lots of that contained herein. Never done anything criminal in your life. No Sir.
 I know Community Control has spent a lot of time trying to do something. It's always something else. And this business over the car, that's a whole another can of worms I'm not going to get into. No Sir, we've had enough of you in Lawrence County and you will be leaving the fine establishment of Lawrence County.
Thus, the record supports the trial court's express statement that it considered the overriding purposes of felony sentencing contained in R.C. 2929.11 and the seriousness and recidivism factors contained in R.C. 2929.12. Nayar makes no showing to the contrary.
 {¶ 37} Further, Nayar has failed to demonstrate that the trial court exceeded its discretion when sentencing Nayar to a term of imprisonment within the statutory limits. The term abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. The mere fact that the prosecutor recommended a lesser sentence does not, in itself, make the sentences handed down unreasonable, arbitrary, or unconscionable. Therefore, we overrule Nayar's sixth assignment of error.
 IV. CONCLUSION {¶ 38} Having reviewed the record and the arguments of the parties, we conclude that Nayar's assignments of error are meritless. Accordingly, we affirm his convictions and sentences.
 JUDGMENT AFFIRMED. *Page 20 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 McFarland, P.J. Abele, J.: Concur in Judgment and Opinion. *Page 1