DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Marietta Municipal Court judgment. A jury found Jeffrey B. Headlee, defendant below and appellant herein, guilty of violating the terms of a protection order in violation of R.C. 2919.27(A)(2). Appellant's brief sets forth the following "subject-headings" that we consider as assignments of error:
 FIRST ASSIGNMENT OF ERROR:
 "EVID. RULE 104 PRELIMINARY ERROR: CRIMINAL RULE 16[.]"
 SECOND ASSIGNMENT OF ERROR: *Page 2 
 "EVID. RULE 103(C) ERROR: JURY TAINTED[.]"
 THIRD ASSIGNMENT OF ERROR:
 "EVID[.] RULE 615 ERROR: ALL WITNESS'S RETAIN CIVIL STALKING PROTECTION ORDERS[.]"
 FOURTH ASSIGNMENT OF ERROR:
 "EVID. RULE 103(C), 802 ERROR: SUBLIMINAL CRIME VIOLATION TO JURY[.}"
 FIFTH ASSIGNMENT OF ERROR:
 "EVID[.] RULE 103, 403(A), 701 ERROR: RULINGS ON EVIDENCE EXHIBIT `A'[.]"
 SIXTH ASSIGNMENT OF ERROR:
 "EVID. RULE 804(B)(6) ERROR: OFFICER NOT AVAILABLE FOR QUESTIONING[.]"
 SEVENTH ASSIGNMENT OF ERROR:
 "EVID[.] RULE 103(C), 802 ERROR: NCIC NOT VALID IN CONSENT AGREEMENT[.]"
 EIGHTH ASSIGNMENT OF ERROR:
 "EVID. RULE 201, ABUSE OF DISCRETION ERROR: INITIAL COMPLAINT ALTERED IN MID TRIAL BY JUDGE[.]"
 NINTH ASSIGNMENT OF ERROR:
 "EVID. RULE 802 ERROR: HEAR SAY"
 TENTH ASSIGNMENT OF ERROR:
 "EVID. RULE 103 ERROR: RECKLESSNESS NOT PROVEN[.]"
 ELEVENTH ASSIGNMENT OF ERROR:
 "EVID[.] RULE 103, 403(A), 701 ERROR: MAP UNCERTIFIED EXHIBIT *Page 3 
`B'[.]"
 TWELFTH ASSIGNMENT OF ERROR:
 "EVID. RULE 802 ERROR: HEAR SAY[.]"
 THIRTEENTH ASSIGNMENT OF ERROR:
 "EVID. R. 201, ABUSE OF DISCRETION: JURY INSTRUCTION ERROR: NOT DEFINED[.]"
 FOURTEENTH ASSIGNMENT OF ERROR:
 "EVID. RULE 201, ABUSE OF DISCRETION ERROR; UNORTHODOX JUROR ALTERNATE RELEASE."
 FIFTEENTH ASSIGNMENT OF ERROR:
 "RULE 613, 616(c) [sic] ERROR: IMPEACHMENT BY SELF-CONSTRADICTION[.]"
 {¶ 2} On September 9, 2006, appellant consented to the issuance of a Civil Stalking Protection Order (CSPO) that prohibited him from coming within five hundred feet of James Rhodes and his family. The CSPO ordered appellant to refrain from following, bothering, harassing or annoying Rhodes. On the evening of April 19, 2007, Rhodes contacted the Washington County Sheriff's Office to report that while driving home from work he had encountered appellant. Rhodes reported that appellant followed him home and made obscene hand gestures toward him. Subsequently, Washington County Sheriff's Deputy Dylan Evans flied a criminal complaint that charged appellant with violating the CSPO. Appellant pled not guilty and the matter came on for jury trial.
 {¶ 3} At trial, Rhodes gave his version of the events. Gene Wentz, a neighbor, also testified that he observed appellant sitting at a stop sign near the victim's house. Appellant testified in his own defense and claimed that he did not use his middle finger *Page 4 
with the victim. Rather, appellant claimed that he was the victim of a Rhodes "road rage" incident and that this was, apparently, a common occurrence. Appellant's son confirmed part of the story and testified that Rhodes followed his father's vehicle at a very close distance.
 {¶ 4} After hearing the evidence the jury returned a guilty verdict. The trial court imposed a $100 fine and a thirty day jail sentence, but suspended the jail sentence on the condition of counseling and good behavior for one year. This appeal followed.
 I {¶ 5} Before we address the assignments of error on their merits, we must first review some procedural rules. App. R. 16(A)(3) requires that each assignment of error include a "reference to the place in the record where each error is reflected." Unfortunately, in the case at bar most of the errors that appellant assigns for our review contain no such reference.
 {¶ 6} Second, many of appellant's arguments are very difficult to distill. Generally, this Court affords considerable leeway to pro se litigants. See e.g. Besser v. Griffey (1993), 88 Ohio App.3d 379, 382,623 N.E.2d 1326, 1328; State ex rel. Karmasu v. Tate (1992),83 Ohio App.3d 199, 206, 614 N.E.2d 827, 832. Limits do exist, however. Leniency does not mean that we are required "to find substance where none exists, to advance an argument for a pro se litigant or to address issues not properly raised." See State v. Nayar, Lawrence App. No. 07CA6,2007-Ohio-6092, at ¶ 28.
 {¶ 7} Third, although appellant's brief contains fifteen assignments of error, our review of the trial transcript reveals fewer than six objections. Consequently, no *Page 5 
objections were lodged at trial to most of the errors assigned on appeal. Appellate courts need not consider errors which could have been, but were not, called to the attention of the trial court at a time when they could have been corrected. State v. Williams (1977),57 Ohio St.2d 112, 364 N.E.2d 1364, at paragraph one of the syllabus; also see Evid. R. 103(A)(1). Thus, barring the application of the Crim. R. 52(B) plain error rule, most of the issues to which appellant objects have been waived.
 {¶ 8} Finally, any errors that do not affect substantial rights must be disregarded. See Crim. R. 52(A). Generally, courts of review ignore trivial matters that have little or no impact on the trial court's judgment. With these principles in mind, we turn our attention to appellant's specific assignments of error.
 II {¶ 9} Appellant asserts in his first assignment of error that the prosecution failed to disclose discoverable materials that he requested. Although we find no objection concerning this during the trial, appellant explains that his trial counsel was unaware of the discovery motions and unaware of the materials that he wanted.
 {¶ 10} After our review of the record, we find no indication that defense counsel was unaware of motions contained in the original papers. Discovery is a common occurrence and any licensed attorney is aware that the discovery process exists. Additionally, the particular form of a discovery request is sometimes based upon strategic tactical decisions. In any event, we find no objection by counsel to a lack of discovery and, thus, we are not persuaded that it constitutes error.
 {¶ 11} Furthermore, the materials that appellant apparently wanted are Rhodes' *Page 6 
cell phone records. We find no indication in the record that appellee possessed these materials.
 {¶ 12} Accordingly, we conclude that appellant's first assignment of error lacks merit and is hereby overruled.
 III {¶ 13} Appellant asserts in his second assignment of error that the jury pool was tainted because the Assistant City Law Director failed to bring forth evidence that the jury pool "unavoidably" knew of CSPOs issued against appellant by other members of the general public or the Rhodes Family. First, we point out that it is not the Assistant City Law Director's responsibility to do this; rather, it is defense counsel's responsibility. Second, our review of the transcript reveals no indication that the jury pool was tainted.
 {¶ 14} Accordingly, the second assignment of error is without merit and is hereby overruled.
 IV {¶ 15} Appellant's third assignment of error is confusing at best, and appears to argue that prosecution witness Gene Wentz also had a CSPO against him. We, however, find no indication that Wentz had such an order. Moreover, even assuming he did, that fact does not disqualify him as a witness.
 {¶ 16} The remainder of the assignment of error refers to things like (1) someone "riding a dead dog `Blazer' from the past," (2) Rhodes is a "vextious [sic] litigator," and (3) how the "public library records cannot colaborate [sic] if Mr. James T. Rhodes really returned a video" on the night in question. We cannot say that any of this material *Page 7 
amounts to reversible error.
 {¶ 17} Accordingly, we hereby overrule appellant's third assignment of error.
 V {¶ 18} We jointly consider appellant's fourth, fifth, sixth, seventh, eighth, ninth and eleventh assignments of error because they involve evidentiary issues that occurred during trial.
 {¶ 19} Appellant claims "subliminal testimony" of "unfound" slander and defamation was advanced because Rhodes used the phrase "you know" and "on going" more than twenty-seven times during his testimony. We disagree with appellant's novel argument and find no prejudice in the use of those phrases.
 {¶ 20} Appellant also objects to the introduction of the CSPO into evidence. The record, however, explicitly shows that his defense counsel agreed to the introduction of that evidence and we find nothing infirm with his decision.
 {¶ 21} Appellant also complains that the prosecution did not bring Deputy Evans to court for examination. First, appellant has not shown how the failure to have the deputy present at trial in any way prejudiced him. Second, appellant could have subpoenaed the witness if he believed Evans could have made a contribution to this ordeal.
 {¶ 22} Appellant also objects to admission into evidence of an "NCIC FORM 10-a status." We are unsure what appellant is referring to as the transcript reveals that the only exhibit the prosecution submitted is the above noted CSPO.
 {¶ 23} Appellant also argues that the "Initial Complaint" was "altered in mid trial by *Page 8 
Judge." Here again, we have no inkling what he is talking about. Appellant does not cite the transcript where this occurred, nor does he cite an objection that would have preserved the error for appellate review. Finally, from our review of the "initial complaint" and the trial court proceedings, we can find no alteration.
 {¶ 24} Appellant also objects to Rhodes referring to Deputy Evans as "Deputy Do Nothing" during his testimony. Although we appreciate appellant's concern for the deputy's reputation, particularly in light of his own testimony that he does not "trust" Deputy Evans, we fail to see how this remark prejudiced him.
 {¶ 25} Appellant also objects to some maps that he referred to during his testimony, but were not introduced into evidence. He does not appear to object that the maps were not admitted into evidence but, instead, complains about the "humiliating" treatment that he and his family were subjected to when they retrieved those maps from the Washington County Courthouse. This, however, is not the type of "error" or conduct over which this court has any jurisdiction.
 {¶ 26} Thus, for the reasons set forth above, we find no merit to appellant's fourth, fifth, sixth, seventh, eighth, ninth and eleventh assignments of error and they are hereby overruled.
 VI {¶ 27} We now consider appellant's tenth assignment of error wherein he argues that the element of "recklessness" was not proven at trial. We disagree with appellant.
 {¶ 28} R.C. 2919.27(A)(2) states that "no person" shall "recklessly violate" the terms of a protection order." A person acts "recklessly" when, "with heedless *Page 9 
indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C). Someone "is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." Id.
 {¶ 29} In the case sub judice, the evidence adduced at trial reveals that on April 19, 2007 appellant gestured to Rhodes on three separate occasions. Rhodes testified that the first time, appellant drove by, made a gesture and smiled. The second time, Rhodes passed appellant while driving. The third time, appellant waited near the Rhodes home. This evidence, if believed, as the trier of fact has the authority to do, reveals that appellant was cognizant of his actions and knew what he was doing. This evidence is more than sufficient to prove the reckless culpable mental state.
 {¶ 30} Accordingly, we hereby overrule appellant's tenth assignment of error.
 VII {¶ 31} We jointly consider appellant's twelfth and fifteenth assignments of error because they involve contested evidentiary issues. It is well settled that evidence weight and witness credibility are issues for the jury to decide. See State v. Dye (1998),82 Ohio St.3d 323, 329, 695 N.E.2d 763; State v. Ballew (1996), 76 Ohio St.3d 244,249, 667 N.E.2d 369. The jury, as the trier of fact, is in the best position to view the witnesses and to observe their demeanor, gestures and voice inflections, and to use those observations to weigh witness credibility. See Myers v. Garson (1993), 66 Ohio St.3d 610, 615,614 N.E.2d 742; Seasons Coal Co. v. Cleveland (1984), *Page 10 10 Ohio St.3d 77, 80, 461 N.E.2d 1273. A trier of fact is free to believe all, part or none of the testimony of each witness. See State v. Nichols (1993),85 Ohio App.3d 65, 76, 619 N.E.2d 80; State v. Caldwell (1992),79 Ohio App.3d 667, 679, 607 N.E.2d 1096.
 {¶ 32} Appellant argues in the case sub judice that he should not have been convicted because, as he testified at trial, the hand "gestures" he made during his encounter with Rhodes were simply "vehicle signals" permitted under the "Digest of Motor Vehicles handbook." The jury, however, did not find his testimony and argument credible and that was well within its province.
 {¶ 33} Appellant also contends that Rhodes "contradicted himself" with "the use of 27+ `you knows'" during his testimony. The jury, however, found nothing amiss with Rhodes' testimony and that, too, was within its province.
 {¶ 34} Accordingly, for these reasons, we find no merit in appellant's twelfth and fifteenth assignments of error and they are hereby overruled.
 VIII {¶ 35} We now return to appellant's thirteenth assignment of error wherein he argues that the jury instructions were improper. We note that the trial court asked defense counsel if he was satisfied with the instructions and he answered in the affirmative. We are also not persuaded that any error occurred in those instructions, let alone plain error. Therefore, we hereby overrule appellant's thirteenth assignment of error.
 IX {¶ 36} Appellant asserts in his fourteenth assignment of error that an "unorthodox *Page 11 
juror alternate release" occurred. Here again, we have difficulty understanding appellant's argument. Appellant objects to what he calls the "unfavored [sic] odds of fairness using a cup and paper system" and also that the "paper parley system was one short leaving the odds unfair." As we pointed out supra, we are not required to construct legal arguments for a litigant. Here, we have examined the transcript and found nothing amiss with how the trial court handled the trial.
 {¶ 37} Appellant fails to inform us as to how the court's action (whatever it is he actually objects to) could have prejudiced him. For these reasons, we overrule appellant's fourteenth assignment of error.
 {¶ 38} Having reviewed the errors assigned and argued, and finding merit in none of them, we hereby affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered the judgment be affirmed and that appellee recover of appellant the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Marietta Municipal Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of *Page 12 
the Rules of Appellate Procedure.
 Kline, P.J., Abele, J. McFarland, J.: Concur in Judgment Opinion *Page 1