The STATE of Ohio, Appellee,

v.

FARTHING, Appellant.

[Cite as *State v. Farthing,* 146 Ohio App.3d 720, 2001-Ohio-7077.]

Court of Appeals of Ohio,
Second District, Greene County.

No. 2000 CA 108.

Decided Dec. 28, 2001.

Robert K. Hendrix, Greene County Assistant Prosecuting Attorney, for appellee.

J. Allen Wilmes, for appellant.

———

WOLFF, Presiding Judge.

{¶ 1}   Justin Farthing appeals from a judgment of the Greene County Court of Common Pleas, which found him guilty of retaliation and sentenced him to four years of imprisonment.

{¶ 2}   The state's evidence established the following facts.

{¶ 3}   Susan Johnson had been Farthing's parole officer prior to March 1999. In early 2000, Farthing was incarcerated at the Pickaway Correctional Institution ("PCI") and apparently did not know that his case had been reassigned to another parole officer.  Farthing and Johnson had had a somewhat difficult relationship, including an altercation at the parole office that had resulted in Farthing's incarceration for a short time, revocation of Farthing's parole, and a request by Farthing that he be transferred to a different parole officer.  Johnson

had also become actively involved in the investigation of a rape of which Farthing had been accused.

{¶ 4} In April 2000, Farthing sent a letter to fellow inmate Brian Lewis through PCI's mail system. Lewis knew Johnson because she had previously served as his parole officer. In the letter, Farthing referred to the sexy parole officer about whom he fantasized and stated, "Let's rape Susan J." The letter also indicated that Farthing and Lewis would both get to "see" Johnson, that she was a "Black Widow," and that he "wanted in [her] web." This letter caught the attention of the PCI postal inspectors, who forwarded it to a prison investigator. Around the same time, Wynona Douglas, a mental health counselor who worked with sex offenders at PCI, interviewed Farthing, who was soon to be released. During the interview, Farthing exhibited delusional fantasies about Johnson "wanting" him and stated that he wanted to "fuck the shit out" of her. He also expressed anger at his treatment by Johnson. Based on her experience with sexual offenders and the combination of sexual delusion and anger that Farthing expressed toward Johnson, Douglas concluded that Johnson was in danger and warned her of that danger.

{¶ 5} On June 22, 2000, Farthing was indicted on one count each of intimidation, retaliation, and attempted complicity to perjury. Farthing pled not guilty and was tried to the court. He was found guilty of retaliation, and the other counts were dismissed. He was sentenced to four years in prison.

{¶ 6} Farthing raises three assignments of error on appeal:

{¶ 7} "I. The state failed to prove venue, an essential element of the instant offense, viz. that the instant offense occurred in Greene County."

{¶ 8} Farthing argues that the state failed to establish proper venue because all of the alleged threats against Johnson were made in Pickaway County, because Johnson lived in Montgomery County and worked "out of her car," and because there was no evidence that a written threat could have been communicated to Johnson in her car.

{¶ 9} Pursuant to R.C. 2901.12(A), the trial in a criminal case shall be held "in the territory of which the offense or any element of the offense was committed." As applied to Farthing, the offense of retaliation required that he purposefully and by force or by unlawful threat of harm to any person or property retaliate against a public servant who was involved in a civil or criminal action or proceeding because the public servant discharged the duties of the public servant. Thus, venue was proper if an element of the offense of retaliation was committed in Greene County.

[2] {¶ 10} According to her supervisor, Johnson "supervised anybody under the parole authorities under our jurisdiction in Greene County." The evidence established, however, that Johnson performed her duties primarily in Montgomery County. At oral argument, the parties agreed that the parole authority does not maintain an office in Greene County and that the courts are not involved in the revocation of parole. Therefore, even though Farthing's parole was on account of a Greene County case, there is no evidence that any of Johnson's duties as a parole officer, which prompted Farthing's alleged retaliation, were discharged in Greene County. In the absence of such evidence, we cannot find that venue was proper in Greene County.

{¶ 11} The first assignment of error is sustained.

{¶ 12} "II. Appellate [sic] communicated no threat of harm which is an essential element of the crime of retaliation."

{¶ 13} Farthing contends that he did not make a threat against Johnson because he did not communicate any intention to harm Johnson to her directly or to any third party who could have reasonably been expected to relay the intention to her.

{¶ 14} R.C. 2921.05(A) provides:

{¶ 15} "No person, purposefully and by force or by unlawful threat of harm to any person or property, shall retaliate against a public servant, a party official, or an attorney or witness who was involved in a civil or criminal action or proceeding because the public servant, party official, attorney, or witness discharged the duties of the public servant, party official, attorney, or witness."

{¶ 16} The retaliation statute does not require that any threat of harm be communicated directly to the person threatened by the person doing the threatening. Rather, we have held that, where "the defendant was either aware that the threats would be communicated to the intended victim by the third person or could reasonably have expected the threats to be so conveyed," he is guilty of the type of unlawful threat of harm required by the retaliation statute. *State v. Lambert* (June 5, 1998), Montgomery App. No. 16667, 1998 WL 288957. Because Farthing did not communicate with Johnson directly, we must determine whether he conveyed a threat of harm to anyone who could reasonably have been expected by Farthing to make that threat known to Johnson.

{¶ 17} Farthing contends that his "private letter to a fellow inmate" did not constitute a threat because the inmate had not been likely to share any of its contents with Johnson.[1] We agree. Farthing had no reason to expect that Lewis

---

1. Farthing does not challenge whether the content of the statements to his fellow inmate could be properly characterized as a threat.

would notify Johnson about the statements contained in his letter. In this respect, this case is distinguishable from several others that have come before the courts wherein threats were communicated to persons in positions of authority or in a trusted relationship with the person who was the object of the threat. For example, in *State v. Webb* (Aug. 4, 2000), Greene App. No. 99 CA 74, 2000 WL 1064295, threats against a magistrate were communicated to a deputy clerk. In *State v. Roberts* (Sept. 26, 1990), Hamilton App. No. C-890639, 1990 WL 410625, threats against a police officer were directed to another police officer. See, also, *Lambert,* supra (threats directed to victim of domestic violence who was staying at a shelter communicated to hotline worker and court advocate associated with the shelter); *State v. Kuhn* (Mar. 28, 1984), Hamilton App. No. C-830489 and C-830490, 1984 WL 6821 (threatening statements directed to roommate of police officer being threatened). Further, no evidence was presented from which the trial court could have concluded that, prior to the interception of this letter, Farthing should have known that Johnson would be informed of the threat because of the routine inspection of prison mail. Because Farthing could not have reasonably expected that the statements in his letter to Lewis would be conveyed to Johnson, he could not have been convicted of retaliation based on the statements contained in that letter.

{¶ 18} The state also presented evidence of Farthing's expressions of anger and lust toward Johnson to PCI mental health counselor Wynona Douglas. Specifically, Farthing expressed sexual delusions about Johnson and anger toward her and stated to Douglas that he "wanted to fuck the shit out of her." Douglas concluded from these comments that Farthing was a threat to Johnson. While we do not question that Douglas's concern for Johnson's safety was warranted, we cannot conclude that this concern stemmed from a threat of harm expressed by Farthing. Rather, Douglas brought her professional training and experience to bear on the feelings expressed by Farthing in concluding that a dangerous confluence of factors existed that represented a classic pattern for "anger rapists"—sexual delusion about the victim's desire for sexual relations with him and anger toward the object of his lust. Farthing did not make an unlawful threat of harm toward Johnson, even though his statements did indicate very unhealthy thought processes about her. Thus, the trial court erred in concluding that Farthing's statements to Douglas amounted to a threat of harm directed at Johnson.

{¶ 19} The second assignment of error is sustained.

{¶ 20} "III. The trial court committed prejudicial error by admitting testimony of a psychiatric aid which communication was confidential per O.R.C. 2317.02."

{¶ 21}   Farthing claims that the trial court erred in admitting Douglas's testimony about his statements during their interview because the state failed to prove that he had waived the physician-patient privilege.   The state claims that no waiver was necessary because Douglas was not a licensed psychologist.

{¶ 22}   R.C. 2317.02(B)(1) provides that statements made ·to the following persons shall be privileged in certain respects:

{¶ 23}   "A physician or a dentist concerning a communication made to the physician or dentist by a patient in that relation or the physician's or dentist's advice to a patient * * * except that, if the patient is deemed by section 2151.421 of the Revised Code to have waived any testimonial privilege under this division, the physician may be compelled to testify on the same subject."

{¶ 24}   Pursuant to R.C. 4732.19, communications between a licensed psychologist and a client are to be treated the same as communications between a physician and a patient.

{¶ 25}   Farthing contends that the state did not establish that he had waived his physician-patient privilege with respect to his conversations with Douglas because it did not introduce his written waiver into evidence.   R.C. 2317.02(B)(1) does not require a written waiver, however.   The state presented testimony from Douglas that, upon entering PCI, every inmate signs a waiver with respect to mental health services that states that not all communications are confidential and that, in particular, if the mental health professionals feel that an inmate poses a danger to others, they have a duty to warn those who are at risk.   Although Douglas had not brought a copy of Farthing's waiver from his file and did not specifically remember seeing it in the file, she expressed great confidence that he could not have entered the institution without signing such a waiver because of the prison's routine procedure for acquiring such a release.   Farthing presented no evidence that he had not signed such a waiver.   Based on this evidence, the trial court could have reasonably found that Farthing had waived his right to privileged communications with Douglas, at least with respect to matters bearing on his danger to other persons.   See Evid.R. 406.

{¶ 26}   In so holding, we reject the state's argument that R.C. 2317.02(B)(1) and 4732.19 did not apply because Douglas was not a licensed psychologist.   The state relies upon *State v. Wood* (2001), 141 Ohio App.3d 634, 752 N.E.2d 990, in support of this argument, but it has ignored that specific facts of that case.   In *Wood,* we held:

{¶ 27}   "[B]ecause the psychologist-patient privilege provided for in R.C. 4732.19 and 2317.02(B) is in derogation of the common law, it must be strictly construed.   Since R.C. 4732.19 expressly refers to licensed psychologists, it

cannot be interpreted to cover unlicensed psychologists, *where there is no evidence that the unlicensed psychologist was merely assisting a licensed psychologist, or that a licensed psychologist was playing a direct, supervisory role in the patient's treatment.*" (Emphasis added.)

{¶ 28} Douglas described her duties and her interaction with the licensed psychologists on PCI's staff as follows:

{¶ 29} "As a psychology assistant, when I feel something like that is going on, then I go to the psychologist who is the supervisor and discuss it with him. And then he, you know, either agrees with me or disagrees with me and then he signs off, you know, myself certainly by being a psych assistant, I can't just go on my own, you know, and [send a duty to warn]. I have to have his sanction because I'm under his license at PCI."

{¶ 30} She also testified that, after her disturbing conversation with Farthing, she "immediately left the room and went to talk with [her] supervisor."

{¶ 31} In *Wood,* no evidence was presented that the unlicensed psychologist had been supervised by a licensed psychologist. Douglas's testimony does indicate that such a relationship existed here. Thus, the holding in *Wood* is inapplicable.

{¶ 32} The third assignment of error is overruled.

{¶ 33} The judgment of the trial court will be reversed for the reasons set forth under the second assignment of error, Farthing's conviction will be vacated, and Farthing will be discharged.

Judgment reversed.

BROGAN and FAIN, JJ., concur.