DECISION AND JUDGMENT
{¶ 1} Appellant, Adaris Welch, appeals his conviction entered by the Wood County Court of Common Pleas in the above-captioned case. For the reasons that follow, we reverse the judgment of the trial court. *Page 2 
 {¶ 2} In 2006, appellant was indicted by the Wood County Grand Jury on various charges, including engaging in a pattern of corrupt activity, theft, and forgery. During appellant's trial on those charges, the state introduced evidence through numerous witnesses, including Bobby Bannister and Detective James Gross of the Perrysburg Township Police Department. On February 7, 2007, a jury returned verdicts of not guilty on all counts of the indictment.
 {¶ 3} Another individual charged with offenses arising out of the same facts that underlay the charges in appellant's case was Lee Darrington. Witnesses Gross and Bannister testified in Darrington's trial, as well. In early 2007, Darrington was convicted of all of the charges, including charges of engaging in a pattern of corrupt activity, theft and forgery.
 {¶ 4} In April 2007, Detective Gross became suspicious that Darrington was making threats to individuals, based upon some correspondence of Darrington's that Gross had obtained. Specifically, Gross came into possession of an envelope, addressed to one John Jackson, that contained intimidating remarks. While executing a search warrant on the contents of the envelope, Detective Gross read communications between Darrington and Jackson "in which threats were being communicated towards other individuals." On the basis of these communications, Detective Gross then sought and obtained a court order permitting the state to screen all of Darrington's incoming and outgoing mail at the Wood County Justice Center. The trial court placed a seal on the order "for safety of individuals that were involved." *Page 3 
 {¶ 5} Pursuant to the court order, Detective Gross screened "a couple of dozen" of Darrington's incoming and outgoing letters. Among the items screened was correspondence that had been sent to Darrington by appellant and correspondence that had been sent by Darrington to appellant.
 {¶ 6} In a letter from appellant to Darrington, dated April 11, 2007, appellant wrote, "Bobby must've got scared to testify on you, when it took him so long to tell on me. Eventually he did doe * * *. What the hell is the address where B at. Man a real bad accident is going to happen to that fag. * * * Detective Gross was thirsty with that shit[.] He need to catch a president Kennedy. * * * Bobby bitch ass know we got to get down on sight he might catch a Kennedy 2." Detective Gross testified that the phrase "catch a President Kennedy" refers to an assassination.
 {¶ 7} In a subsequent letter, from Darrington to appellant, Darrington replied that he thought "B" was "on the E-side in the Wilers." Detective Gross testified that the Weilers is a public housing unit on the east side of Toledo. This information corresponded to Detective Gross's understanding that Bannister had been "hanging out in the [Weilers],] whether that's where he actually lives or was staying."
 {¶ 8} In a letter from appellant to Darrington postmarked April 25, 2007, appellant wrote, "It ain't in your motion is B. address. If it is let me get that." On the outside of the envelope appellant had written, "T.B. from da bottomofdamap got a 50 round clip unda bottom of da strap * * *." *Page 4 
 {¶ 9} Finally, in a letter from Darrington to appellant dated April 28, 2007, Darrington wrote, "They took my legal paperwork from me[,] so my lawyer has it. I released it 2 him on Friday[,] but I'll get that to you." In addition, Darrington wrote on the outside of the envelope, "When you get a clear shot take `em out."
 {¶ 10} After reviewing the letters, Detective Gross contacted Bannister and warned him to "use caution" and to contact him if he had any problems.
 {¶ 11} On May 3, 2007, appellant was indicted by the Wood County Grand Jury on two counts of complicity to retaliation, in violation of R.C. 2923.03(A)(2) and (3), and 2921.05(A). According to the state, appellant had aided or abetted and/or conspired with Lee Darrington in retaliating against Gross and Bannister for providing testimony in appellant's and Darrington's previous criminal cases.
 {¶ 12} The matter was tried before a jury on August 13, 2007. That same day, the jury returned a verdict of not guilty as to the count alleging retaliation against Gross, and a verdict of guilty as to the count alleging retaliation against Bannister. For this conviction, the trial court sentenced appellant to serve four years in prison.
 {¶ 13} On appeal, appellant raises the following assignments of error:
 {¶ 14} I. "THE STATE'S EVIDENCE WAS INSUFFICIENT TO ESTABLISH THAT APPELLANT WAS GUILTY OF RETALIATION BEYOND A REASONABLE DOUBT AS APPELLANT COMMUNICATED NO THREAT OF HARM TO THE ALLEGED VICTIM, WHICH IS AN ESSENTIAL ELEMENT OF THE CRIME OF RETALIATION." *Page 5 
 {¶ 15} II. "THE TRIAL COURT COMMITTED ERROR WHEN IT FAILED TO GIVE THE JURY THE APPELLANT'S PROPOSED JURY INSTRUCTION WITH REGARD TO THE WORD `THREAT'."
 {¶ 16} III. "THE STATE'S QUESTIONS OF DETECTIVE JAMES GROSS REGARDING BOBBY BANNISTER DENIED APPELLANT HIS RIGHT TO CONFRONTATION IN VIOLATION OF CRAWFORD V. WASHINGTON."
 {¶ 17} Appellant argues in his first assignment of error that the evidence was insufficient to support a conviction for retaliation, because appellant did not communicate any intention to harm Bannister to Bannister directly or to any third party who could reasonably have been expected to relay the alleged unlawful threat to Bannister.
 {¶ 18} "When reviewing the sufficiency of the evidence supporting a criminal conviction, an appellate court's role is to examine the evidence admitted at trial to determine whether the evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Simms, 165 Ohio App.3d 83,2005-Ohio-5681, at ¶ 9 (quoting State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus.) "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. Evaluation of the sufficiency of the evidence raises a question of law and does not permit a weighing of the evidence. Id. *Page 6 
 {¶ 19} The elements of the crime of retaliation are set forth at R.C. 2921.05, which relevantly provides as follows:
 {¶ 20} "(A) No person, purposely and by force or by unlawful threat of harm to any person or property, shall retaliate against a public servant, a party official, or an attorney or witness who was involved in a civil or criminal action or proceeding because the public servant, party official, attorney, or witness discharged the duties of the public servant, party official, attorney, or witness.
 {¶ 21} "* * *
 {¶ 22} "(C) Whoever violates this section is guilty of retaliation, a felony of the third degree."
 {¶ 23} Thus, it was the state's burden to prove that appellant (1) purposefully, (2) by unlawful threat of harm to any person, (3) retaliated against a witness who was involved in a criminal action (4) because that person discharged his duties as a witness.
 {¶ 24} It is understood that "[t]he retaliation statute does not require that any threat of harm be communicated directly to the person threatened by the person doing the threatening." State v. Farthing
(2001), 146 Ohio App.3d 720, 724.[1] Rather, "where `the defendant was either aware that the threats would be communicated to the intended victim by the third person or could reasonably have expected the threats to be so *Page 7 
conveyed,' he is guilty of the type of unlawful threat of harm required by the retaliation statute." Id., citing State v. Lambert (June 5, 1998), 2d Dist. No. 16667.
 {¶ 25} Because appellant did not communicate with Bannister directly, we must determine whether he conveyed a threat of harm to anyone who could reasonably have been expected by appellant to make that threat known to Bannister. Appellant argues that his private correspondence to Darrington did not constitute a threat within the meaning of R.C. 2921.05, because appellant had no reason to expect that such correspondence would ever be communicated to Bannister. We agree. Appellant certainly had no reason to expect that Darrington would notify Bannister about the statements contained in his letters. Nor did he have any reason to expect that Bannister would be informed of the threat as a result of the screening of Darrington's mail. The evidence was undisputed that, at all relevant times, appellant had no knowledge that the content of his private correspondence with his friend was being read by law enforcement.[2] Because appellant could not reasonably have expected that the statements in his letters to Darrington would be communicated to Bannister, he could not have been convicted of retaliation based on *Page 8 
the statements contained in those letters. Accordingly, appellant's first assignment of error is found well-taken.
 {¶ 26} In light of our conclusion with respect to appellant's first assignment of error, we find the remaining assignments of error to be moot.
 {¶ 27} The judgment of the Wood County Court of Common Pleas is reversed. Appellee is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, P.J., William J. Skow, J., CONCUR.
[1] At least one court has gone so far as to say that the threat of harm need not be communicated at all to the victim of retaliation. SeeState v. Nayar, 4th Dist. No. 07CA6, 2007-Ohio-6092.
[2] The letter authored by appellant containing the threatening language was dated April 11, 2007, and was postmarked April 12, 2007. The judgment entry granting the state's motion to screen mail was not even signed by the court until April 13, 2007. Although the evidence revealed that Darrington did eventually become suspicious that his mail was being read, the evidence likewise indicated that those suspicions did not arise until April 28, 2007, approximately 17 days after appellant sent his initial letter. Evidence provided by the state indicating that an officer and a corrections counselor had reviewed mail procedures with appellant does not alter our conclusion in this case. *Page 1