[Cite as *State v. Glover*, 2012-Ohio-165.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96888**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## AHMAD GLOVER

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-546700

**BEFORE:** Rocco, J., Boyle, P.J., and Cooney, J.

**RELEASED AND JOURNALIZED:** January 19, 2012

**ATTORNEY FOR APPELLANT**

Britta M. Barthol
P.O. Box 218
Northfield, Ohio 44067

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY:   Carl Sullivan
        Matthew E. Meyer
Assistant Prosecuting Attorneys
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

KENNETH A. ROCCO, J.:

{¶ 1} After a jury convicted defendant-appellant Ahmad Glover of one count of retaliation in violation of R.C. 2921.05, Glover appeals, claiming in his sole assignment of error that his conviction is not supported by sufficient evidence.

{¶ 2} This court has reviewed the record, however, and finds otherwise. Consequently, Glover's conviction is affirmed.

{¶ 3} The record reflects that on the afternoon of January 21, 2011, Glover appeared in the Rocky River Municipal Court for a video arraignment

on a charge of shoplifting. Magistrate Kelly Larrick Serrat conducted the proceeding.

{¶ 4} At Glover's trial in this case, Serrat testified that, via the videocamera set up in the North Olmsted jail, Glover sat in the chair "slouched deeply" and "looking down, away" from the lens, so Serrat instructed Glover "to sit up straight, look at the camera, * * * and that he had to answer [her] verbally because everything was being recorded." Serrat informed Glover of the charge, the possible penalties, and his constitutional rights.

{¶ 5} According to Serrat, Glover "became irate" when she informed him of the fact he had been charged with a first-degree misdemeanor. He "was yelling and kinda' mumbling. He swore a lot. He just was very angry." As Serrat continued with the proceeding, Glover told her "it was none of her business to ask him questions," but he did indicate he understood the information she gave him. He further indicated he wanted to plead guilty to the charge.

{¶ 6} Serrat accepted Glover's plea and concluded the proceeding by ordering him to serve a 90-day sentence in county jail. As was her habit, Serrat then immediately shut off the videocamera. Later that same day, Serrat received a telephone call from the North Olmsted Police Department.

Sergeant Jeffrey Miner informed Serrat about what had transpired while Glover was being transferred from the city to the county jail.

{¶ 7} Miner testified he and his partner, Officer Michael Bujnovsky, received the assignment to transport Glover and another prisoner from North Olmsted's jail to the county jail. Glover acted in a combative manner when he was being prepared for travel, so Miner activated the patrol car's interior videocamera to monitor Glover's behavior during transport.

{¶ 8} After Glover and the other prisoner were secured and placed into a patrol car, Bujnovsky drove toward downtown Cleveland; Miner was seated directly in front of Glover. Glover's distance behind Miner was no more than a "foot and a half," with only a metal screen separating them.

{¶ 9} According to Miner, during the initial portion of the trip, Glover made threats toward Miner and Bujnovsky. When the patrol car got "onto [I-]71 northbound [Glover] then turned his attention to Magistrate Serrat." Miner heard Glover say that Serrat "put him in a cage and he's gonna find that bitch judge and fuck her up when he got out for putting him in a cage." Glover made these remarks "three or four times during the trip."

{¶ 10} Bujnovsky testified that he also heard Glover's comments. The patrol car's videocamera recorded Glover's actions and demonstrated that for nearly the entire ride he was speaking as he looked out the window. The

audio portion of the recording, however, was poor; Glover's words were, for the most part, obscured by "road noise."

{¶ 11} Glover subsequently was indicted on one count of retaliation. His case proceeded to a jury trial. After considering the evidence, the jury found Glover guilty of the charge and the trial court duly imposed sentence.

{¶ 12} Glover appeals his conviction with the following assignment of error:

**"I.    The evidence was insufficient as a matter of law to support a finding beyond a reasonable doubt that Appellant was guilty of retaliation."**

{¶ 13} Glover argues the trial court should have granted his motions for acquittal because the state failed to present sufficient evidence that he "seriously" intended any threat of harm to be conveyed to Serrat. This court disagrees.

{¶ 14} A motion for acquittal under Crim.R. 29(A) is governed by the same standard used for determining whether a verdict is supported by sufficient evidence. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶37. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact

could have found the essential elements of the crime proven beyond a reasonable doubt. * * *." *Id.*

{¶ 15} Glover was charged with retaliation, in violation of R.C. 2921.05(A). That statute prohibits the offender from "purposely and * * * by unlawful threat of harm to any person * * * , retaliat[ing] against a public servant, * * * because the public servant * * * discharged the duties of a public servant * * * ."

{¶ 16} Proof of guilt may be made by circumstantial evidence, real evidence, and direct evidence, or any combination of the three, and all three have equal probative value. *State v. Nicely*, 39 Ohio St.3d 147, 529 N.E.2d 1236, (1988). "Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, (1991), paragraph two of the syllabus.

{¶ 17} Moreover, this court has stated that, when a threat forms the basis of a charge under R.C. 2921.05(A), that threat either can be communicated directly to the victim, or can be communicated to a third person so that the third person could be reasonably expected to convey the threat to the victim. *State v. Andrejic*, 8th Dist. No. 79700, 2002-Ohio-1649, 2002 WL 538762, citing *State v. Lambert,* 2d Dist. No. 16667, 1998 WL

288957.  In *Lambert*, the defendant called the agency his wife utilized to be her "police advocate" in her pursuit of a domestic violence charge against him, and proceeded to inform the person who answered the phone of his intent to kill his wife; the appellate court noted that a reasonable juror could have found Lambert believed that "such a call was his most promising method of conveying his threats" to his wife, since his calls to his wife's phone were blocked.

{¶ 18} In this case, the state's evidence demonstrated that Glover acted toward Serrat in a "nasty" manner as she conducted the hearing on his shoplifting charge.  Glover became physically violent before he was placed into a patrol car for transport to county jail.  During the entire time he was in the patrol car with two police officers only "a foot and a half" away from him, Glover made threats, which he repeated "three or four times," to "find that bitch judge and fuck her up when he got out for putting him in a cage." Miner described Glover's tone as "combative and threatening" and believed that Glover "[o]bviously, * * * wanted it to be known" what he was saying. Miner was convinced to the point that he thought it necessary to call Serrat to warn her of Glover's words.  *State v. Nayar*, 4th Dist. No. 07CA6, 2007-Ohio-6092, 2007 WL 3407169.

{¶ 19} The videotape supports the officers' interpretation that Glover's intent was earnest. The other prisoner, who was seated next to Glover, became extremely uncomfortable during the ride, stared at Glover several times, and shifted his body away as if to distance himself from Glover's comments.

{¶ 20} Viewing this evidence in a light most favorable to the prosecution, as required by Crim.R. 29, the trial court correctly concluded that a rational juror could have found all the elements of retaliation were proven beyond a reasonable doubt. *Id.*; *compare*, *State v. Oliver*, 8th Dist. No. 90880, 2009-Ohio-228, 2009 WL 161690, citing *State v. Farthing*, 146 Ohio App.3d 720, 2001-Ohio-7077, 767 N.E.2d 1242 (2nd Dist.), (cases in which the statements were made in confidence).

{¶ 21} Glover's sole assignment of error, therefore, is overruled.

{¶ 22} Glover's conviction is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, JUDGE

MARY J. BOYLE, P.J., and
COLLEEN CONWAY COONEY, J., CONCUR