[Cite as *State v. Myers*, 2016-Ohio-223.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                      Court of Appeals No. WD-15-017

    Appellee                                        Trial Court No. 13 CR 141

v.

Craig Myers                                        **DECISION AND JUDGMENT**

    Appellant                                       Decided:  January 22, 2016

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, Alyssa M.
Blackburn, Martha S. Schultes and David T. Harold, Assistant
Prosecuting Attorneys, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**JENSEN, P.J.**

{¶ 1} Following a jury verdict, defendant-appellant, Craig Myers, appeals the

February 6, 2015 judgment of the Wood County Court of Common Pleas, convicting him

of retaliation, a violation of R.C. 2921.05.  For the reasons that follow, we affirm the trial

court's judgment.

## I. Background

{¶ 2} Craig Myers was an inmate at the Wood County Justice Center, awaiting trial for the July 16, 2011 abduction and felonious assault of his former girlfriend. In December of 2012, attorney William Hayes was appointed by the trial court to represent Myers. He estimates that he was the fourth attorney appointed to Myers' case.

{¶ 3} On February 21, 2013, after receiving numerous angry letters from Myers, including one that Hayes interpreted to be a threat to court personnel, Hayes filed a motion to raise the issue of Myers' competency to stand trial. He did not consult with Myers before filing the motion, reasoning that "asking a person you thought wasn't mentally well if they're not mentally well didn't make a lot of sense." He also did not immediately notify Myers after filing the motion. Myers learned of the motion from his mother.

{¶ 4} On March 3, 2014, Myers telephoned his mother from the jail. She informed him that Hayes had told her that the filing of the motion to evaluate his competency served to halt proceedings. This made Myers irate because he had made clear to Hayes that he wanted to push the case forward to trial, prompting Hayes in January to file a motion to withdraw Myers' prior waiver of speedy trial time constraints. He told his mother: "I'm going to beat his fucking head in; that's what I'm gonna do." His mother told him to calm down and that Hayes would be visiting the next day and could talk to him about it. Myers responded: "I'm going to beat the fuck out of him tomorrow when I see his ass. I swear to God. I'm going to beat his fucking ass."

2.

**{¶ 5}** Calls made by inmates at the jail are subject to being recorded and Myers' conversation with his mother was, in fact, recorded. It was reviewed by Detective Ginnie Barta, the detective responsible for investigating the charges for which Myers was awaiting trial. On March 5, 2013, Hayes arrived at the jail, expecting to meet with his client alone in a closed interview room. Barta, however, concerned for Hayes' safety, alerted jail personnel to the fact that Myers had threatened harm to Hayes, and Hayes was instead escorted to the booking room where Myers would be separated from him by a glass barrier. During the meeting, Myers stood at the glass, shouting at Hayes.

**{¶ 6}** Myers was charged with retaliation, a violation of R.C. 2921.05(A), a felony of the third degree. After a number of continuances, the case was tried to a jury on February 4, 2015. The jury found Myers guilty and the court sentenced him to 30 months' imprisonment, to be served consecutively with the sentence he ultimately received in the abduction and felonious assault case. Myers appealed that decision, and he assigns the following errors for our review:

> I. The evidence was insufficient as a matter of law to support a finding beyond a reasonable doubt that Appellant was guilty of retaliation.

> II. Appellant's conviction was against the manifest weight of the evidence presented by the state and was contrary to law.

## II. Law and Analysis

**{¶ 7}** In this appeal, Myers challenges both the sufficiency and the weight of the evidence. Whether there is sufficient evidence to support a conviction is a question of

3.

law.  *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).  In reviewing a challenge to the sufficiency of evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.)  *State v. Smith,* 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997).  In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses.  *State v. Walker,* 55 Ohio St.2d 208, 212, 378 N.E.2d 1049 (1978).

{¶ 8} When reviewing a claim that a verdict is against the manifest weight of the evidence, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the jury clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  *Thompkins* at 387.  We do not view the evidence in a light most favorable to the state.  "Instead, we sit as a 'thirteenth juror' and scrutinize 'the factfinder's resolution of the conflicting testimony.'"  *State v. Robinson,* 6th Dist. Lucas No. L-10-1369, 2012-Ohio-6068, ¶ 15, citing *Thompkins* at 388.  Reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction."  *Thompkins* at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

4.

**{¶ 9}** R.C. 2921.05(A) provides:

No person, purposely and by force or by unlawful threat of harm to any person or property, shall retaliate against a public servant, a party official, or an attorney or witness who was involved in a civil or criminal action or proceeding because the public servant, party official, attorney, or witness discharged the duties of the public servant, party official, attorney, or witness.

**{¶ 10}** Thus, under R.C. 2921.05(A), the state was required to establish that Myers "(1) purposefully, (2) by unlawful threat of harm to any person, (3) retaliated against a public servant or attorney (4) because that person discharged his duties in a criminal proceeding." *State v. Nayar,* 4th Dist. Lawrence No. 07CA6, 2007-Ohio-6092, ¶ 14. Numerous courts have explained that "[t]he retaliation statute does not require that any threat of harm be communicated directly to the person threatened by the person doing the threatening." *State v. Farthing*, 146 Ohio App.3d 720, 724, 767 N.E.2d 1242 (2d Dist.2001). *See also State v. Welch,* 6th Dist. Wood No. WD-07-057, 2008-Ohio-6540, ¶ 24; *State v. Glover,* 8th Dist. Cuyahoga No. 96888, 2012-Ohio-165, ¶ 17. A violation will be found where "the defendant was either aware that the threats would be communicated to the intended victim by the third person or could reasonably have expected the threats to be so conveyed." *Id.,* quoting *State v. Lambert*, 2d Dist. Montgomery No. 16667, 1998 WL 288957 (June 5, 1998).

5.

{¶ 11} Myers argues that there was no reasonable expectation that the threats he discussed with his mother would be communicated to Hayes. He describes the statements he made as a "rant" about his unhappiness with his attorney, made to his mother before he had an opportunity to reflect or to absorb the information she relayed. He likens the facts of his case to those we considered in *Welch* and to those the Second District considered in *Farthing*, both of which involved threats discussed between friends via the prison mail system.

{¶ 12} In *Welch,* a detective obtained a court order permitting the state to screen the incoming and outgoing mail of Darrington, an inmate at the Wood County Justice Center. *Id.* at ¶ 4-5. In screening that mail, the detective came across correspondence sent by Welch to Darrington in which Welch threatened to harm a witness who testified against them on charges of engaging in a pattern of corrupt activity, theft, and forgery. *Id.* at ¶ 5-6. The detective warned the witness to use caution and to contact him if he had problems. *Id.* at ¶ 10. Welch was charged with complicity to retaliation.

{¶ 13} Welch argued that his private correspondence to Darrington did not constitute a threat within the meaning of R.C. 2921.05, because he had no reason to expect that the threat would ever be communicated to the witness. *Id.* at ¶ 25. We agreed. *Id.* We held that Welch had no reason to expect Darrington to inform the witness of the threats and that he had no knowledge that the content of his private correspondence with Darrington was being read by law enforcement. *Id.* We concluded that because Welch could not reasonably have expected that the statements in his letters

6.

would be communicated to the witness, he could not properly be convicted of retaliation based on the statements contained in those letters. *Id.*

{¶ 14} In *Farthing,* 146 Ohio App.3d at 723, 767 N.E.2d 1242, Farthing sent a letter to a fellow inmate through the prison mail system that said "let's rape Susan." Susan was Farthing's parole officer. *Id.* at 722. Prison postal inspectors reviewed the correspondence and forwarded the letter to a prison investigator. *Id.* at 723. Around the same time, Farthing also told a mental health counselor at the prison that he wanted to "fuck the shit out" of his parole officer. *Id.* The counselor concluded that the parole officer was in danger and warned her of that danger. *Id.*

{¶ 15} As to the letter to his fellow inmate, Farthing argued that this "private letter" did not constitute a threat because his fellow inmate was not likely to share its contents with the parole officer. *Id.* at 724. The court agreed. *Id.* It determined that despite the fact that the prison conducted the routine inspection of mail, there was no evidence before the interception of this particular letter from which the trial court could have concluded that Farthing should have known that his parole officer would be informed of the threat. As to the statements to the counselor, the court concluded that although Farthing's statements revealed "very unhealthy thought processes," they did not rise to the level of a threat of harm. *Id.* at 725. The appellate court, therefore, reversed the trial court's decision. *Id.* at 727.

{¶ 16} As in *Welch,* 6th Dist. Wood No. WD-07-057, 2008-Ohio-6540, and *Farthing,* Myers clearly did not directly communicate a threat to Hayes. The statements

7.

at issue were made only to his mother. Myers does not dispute that the Wood County Justice Center has the right to record phone calls, but he insists that while the calls were *subject to* recording, he was not aware whether his phone calls were being recorded or not. Given that he had no actual knowledge that his calls were being monitored, he insists that the state did not establish that he could have reasonably expected the threats he made to be conveyed to Hayes.

{¶ 17} The state, on the other hand, argues that signs are posted and a recording plays during the inmate's phone call specifically advising that all calls may be recorded. They also point out that in a February 13, 2013 phone call with his mother, Myers called the trial judge "a sorry ass excuse for a judge." During that call, his mother told him to calm down and warned him "well, this is being taped you know," to which Myers responded: "I don't give a fuck if it's being taped. I don't give a fuck if Ginnie Barta fucking jacks off to it. I don't care!" The state contends that these facts show that Myers could have expected (a) that his calls were being monitored, and (b) that a threat such as the one he made against Hayes would be conveyed to Hayes.

{¶ 18} We agree with the state. We believe this case is analogous to the situation presented in *State v. Reyes*, 6th Dist. Wood Nos. WD-09-073, WD-09-089, 2010-Ohio-4712, ¶ 11. In *Reyes,* the defendant communicated to a mental health counselor at the Wood County Justice Center that he planned to harm a sergeant employed at the center. The defendant had signed a waiver acknowledging that certain information communicated to the counselor, such as a threat of harm to others, was not confidential.

8.

We, therefore, held that the defendant could have reasonably expected the counselor to relay the threat to the sergeant who was the intended victim.

{¶ 19} Similar to the waiver in *Reyes,* the evidence established that (1) the signs posted by the phones alerted Myers to the fact that calls were subject to recording; (2) this was reinforced by an automated recording that interrupted his call to remind that the conversation could be recorded; and (3) Myers' own mother had previously reminded Myers that their calls were being recorded, to which Myers responded that he did not care. We also note that Hayes' testimony at trial established that it was his practice to forewarn every client that calls made from the jail are recorded and that the state regularly reviews these tapes for use at trial. In light of these numerous warnings, Myers could have reasonably expected that his phone call would be monitored and that action would be taken to warn the intended victim of his threats. This is especially true given that Myers was going to be meeting face-to-face with the person he threatened within less than 24 hours of making the threats.

{¶ 20} Finally, Myers argues that when Hayes met with him on March 5, 2013, he was not aware that the threat had been made. Hayes testified that before meeting with Myers, he was told only that for his safety, he was being moved to a room with a glass partition. It was not until after the meeting that Hayes was informed that Myers had made a phone call threatening him. This distinction is irrelevant. What is relevant is whether Myers could reasonably have expected that the threats would be conveyed to Hayes. As we have explained, Myers could have reasonably expected his threats to be

9.

communicated to Hayes, especially given the fact that Myers was scheduled to meet with Hayes in person the next day.

**{¶ 21}** Accordingly, we conclude that the state presented sufficient evidence to support each element of the crime of retaliation, and that the jury's verdict was not against the manifest weight of the evidence. We find both of Myers' assignments of error not well-taken.

### III. Conclusion

**{¶ 22}** We find Myers' assignments of error not well-taken and affirm the February 6, 2015 judgment of the Wood County Court of Common Pleas. The costs of this appeal are assessed to Myers pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.    _____
                 JUDGE
Thomas J. Osowik, J.

              _____
James D. Jensen, P.J.          JUDGE
CONCUR.

              _____
              JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.