[Cite as *State v. Merriman*, 2021-Ohio-1403.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                             :

    Plaintiff-Appellee,            :

                                  No. 109431

v.                                                        :

MONOLITO MERRIMAN,                :

    Defendant-Appellant.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** VACATED
**RELEASED AND JOURNALIZED:** April 22, 2021

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-633415-A

---

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Jonathan Block, Assistant Prosecuting
Attorney, *for appellee.*

Thomas Rein, *for appellant.*

ANITA LASTER MAYS, P.J.:

{¶ 1} Defendant-appellant Monolito J. Merriman ("Merriman") appeals

his convictions and sentence. He asks this court to reverse his convictions and

vacate his sentence. Finding merit to this argument, we vacate Merriman's convictions and sentence.

{¶ 2} On October 9, 2018, Merriman was indicted on four counts of retaliation, third-degree felonies, in violation of R.C. 2921.05. Before the jury trial commenced, the state and defense counsel stipulated to Merriman's reports of sanity and competency. After the jury trial, Merriman was found guilty of all counts. He was subsequently sentenced on Count 1 to 36 months' imprisonment and three years of discretionary postrelease control following his release. Merriman was sentenced to four years' community control on the remaining three counts of retaliation, to run concurrently with the community control sentence on Count 1.

## I.    Facts and Procedural History

{¶ 3} After an incident with a store clerk in Beachwood, Merriman checked himself into the hospital. During inpatient treatment for Merriman's mental health, he disclosed to his psychiatrist that he wanted to harm three police officers and a judge who Merriman felt were a threat to him. Merriman told his psychiatrist that he would follow these people to their home from public places and would dress up in wigs and hats to disguise his identity. Merriman also expressed that he knew his targets' home addresses and the identities of their spouses and children. He went on to state that he was going to scare the judge, who presided over his fiancée's legal case, with an explosion.

{¶ 4} Merriman disclosed to a medical student the names of the officers and their respective precincts. After Merriman's disclosures to the psychiatrist and the

medical student, his psychiatrist requested a second opinion to determine if Merriman's threats were egregious and credible enough to breach confidentiality and report them to the police. Two additional psychiatrists interviewed Merriman where he told them that he got into an altercation with a store clerk, threatened to harm the clerk, and subsequently checked into the hospital. Merriman again disclosed that he wanted to scare the judge that he felt kept him from contacting his girlfriend. He also named three police officers that he felt were picking on him. Merriman shared that he had a gun and planned to kill himself while confronting the police officers. Merriman also disclosed that he was going to harm his brother and mother.

{¶ 5} After this session, both of the psychiatrists recommended that they breach their duty of privilege and inform law enforcement of their concerns. When Merriman's mother was contacted and told about the threats, she stated that "she was not particularly worried." (Tr. 189.) During Merriman's stay at the hospital, he was extremely uncooperative, refusing to take his medication, barricading himself in his room, and punching the walls numerous times. Merriman was diagnosed with bipolar disorder, and it was determined that he was having a bipolar episode when he arrived at the hospital. In addition to bipolar disorder, Merriman has homicidal ideations and schizophrenic disorder, where he hears voices.

{¶ 6} The psychiatrists explained to Merriman that they would have to breach his confidentiality and notify the individuals of the threats. Merriman then became compliant and started taking his medication. After two weeks of being on

medication, Merriman calmed down and stopped his aggressive behaviors. After notification, Merriman was charged with four counts of retaliation. During the jury trial, Merriman's counsel, pursuant to Crim.R. 29(A), moved the court for a judgment of acquittal arguing that there were no physical or testimonial evidence that Merriman was involved in a criminal proceeding involving the named judge "in the discharge of her duties as a public servant." (Tr. 267.) Likewise, regarding the three police officers there has not been any testimony elicited that Merriman was involved in any criminal or civil proceedings that he could allegedly retaliate against. In fact, one officer claimed that he did not know Merriman. (Tr. 268.) The trial court denied the motion, and the jury found Merriman guilty. Merriman was sentenced to 36 months' imprisonment. Merriman filed this appeal assigning three errors for our review:

> I. The trial court erred by failing to grant a judgment of acquittal pursuant to Crim.R. 29(A), on the charges, and thereafter entering a judgment of conviction of that offense as those charges were not supported by sufficient evidence, in violation of defendant's right to due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution;
>
> II. Appellant's convictions are against the manifest weight of the evidence; and
>
> III. The trial court erred by ordering Appellant to serve an improper sentence.

## II. Crim.R. 29(C) Motion

### A. Standard of Review

**{¶ 7}** "A Crim.R. 29(A) motion for acquittal tests the sufficiency of the evidence." *State v. Yavorcik*, 2018-Ohio-1824, 113 N.E.3d 100, ¶ 62 (8th Dist.), citing *State v. Hill*, 8th Dist. Cuyahoga No. 98366, 2013-Ohio-578, ¶ 13. "We consider whether the state has met its burden of production at trial." *Id.*, citing *State v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41.

> Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the state's evidence is insufficient to sustain a conviction for an offense. Accordingly, an appellate court reviews a trial court's denial of a defendant's motion for acquittal using the same standard it applies when reviewing a sufficiency-of-the-evidence claim.

*State v. Fisher*, 8th Dist. Cuyahoga No. 105802, 2018-Ohio-2189, ¶ 9, quoting *State v. Hoskin-Hudson*, 8th Dist. Cuyahoga No. 103615, 2016-Ohio-5410, ¶ 7.

**{¶ 8}** Accordingly,

> [w]ith respect to sufficiency of the evidence, "'sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *Black's Law Dictionary* 1433 (6 Ed.1990). *See also* Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Robinson*, 162 Ohio St. 486, 124 N.E.2d 148 (1955). In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. *Tibbs v. Florida*, 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663 (1982), citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

*State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541.

**B.    Law and Analysis**

**{¶ 9}** Merriman argues that the trial court erred when it denied his Crim.R. 29(A) motion. He further contends that the evidence was not sufficient to convict him of retaliation. R.C. 2921.05(A) states,

> No person, purposely and by force or by unlawful threat of harm to any person or property, shall retaliate against a public servant, a party official, or an attorney or witness who was involved in a civil or criminal action or proceeding because the public servant, party official, attorney, or witness discharged the duties of the public servant, party official, attorney, or witness.

The state must prove that Merriman purposely threatened harm to the judge and police officers who were involved in a civil or criminal action or proceeding as a result of discharging the duties of a public servant. The facts revealed that upon checking himself into the hospital during a psychiatric assessment, Merriman made threats to harm himself and several other individuals. Initially, Merriman did not provide names to the Emergency Psychiatric Assessment Team ("EPAT") but after additional interviews Merriman provided names and details. After discussion, team members determined it necessary to warn the named individuals pursuant to Ohio law.

**{¶ 10}** Although the psychiatrists determined that Merriman's threats warranted breaching confidentiality, "[t]he validity of executing a duty to warn does not necessarily equate to establishing a threat of harm for purposes of proving felony retaliation. Whether a statement constitutes a threat for purposes of retaliation depends on the factual circumstances." *State v. Oliver*, 8th Dist. Cuyahoga No. 90880, 2009-Ohio-228, ¶ 33.

{¶ 11} The record reveals that during trial, one of the officers testified that he did not know Merriman. (Tr. 256.) Another officer could not be contacted because he had retired four to five years before the 2018 episode. (Tr. 230.) And the final officer never returned any calls regarding the threats. (Tr. 231.) It was also determined during trial that the judge, Merriman threatened, never presided over a proceeding involving Merriman. The facts revealed that Merriman was in the middle of a mental-health crisis and bipolar episode at the time he made threats against the judge and police officers. After medication and a stay in a psychiatric unit, Merriman became compliant and the threats ceased.

{¶ 12} In *Oliver*, the defendant made statements to hospital personnel, threatening to attack the prosecutor, judge, and police officer that were involved in his earlier criminal case. *Oliver* was involuntarily committed for further treatment, and hospital personnel warned the identified individuals that there was a concern for their safety. This court held that defendant's retaliation conviction was not supported by sufficient evidence to find that the defendant purposefully or unlawfully threatened any of the individuals in retaliation for their involvement with his earlier criminal matter. Additionally, the court held "[t]he evidence establishes that defendant made these statements to his therapist and treating physicians for purposes of treatment." *Id.* at ¶ 32.

{¶ 13} Merriman differs from *Oliver* in that Merriman's threats involved individuals that were not involved in prior or current civil or criminal proceedings against him. Merriman was not taking his medicine, was upset and went to the

emergency room. During his emergency room assessment, threats were made regarding unnamed individuals. During continued assessments for treatment purposes, Merriman's threats became more specific. However, it is important to restate that Merriman was still in a mental-health crisis. We determine that Merriman confided and made the statements to therapists and treating physicians for treatment purposes.

{¶ 14} We therefore find that the evidence presented is insufficient to sustain a conviction for retaliation.

> *See State v. Farthing*, 146 Ohio App.3d 720, 725, 2001-Ohio-7077, 767 N.E.2d 1242 (statements made to mental health counselor, which warranted safety concerns for the targeted victim, did not stem from a "threat of harm" expressed by the defendant for purposes of retaliation). To provide otherwise, would increase the risk a mental health patient poses to the public by discouraging them from seeking treatment for fear of being prosecuted for their unhealthy thoughts and feelings. There was no non-hearsay evidence presented at trial that defendant stated any intention or plan to harm these people.

*Id.* at ¶ 35.

{¶ 15} As this court stated in *Oliver*, and we want to reiterate here: "[w]e emphasize that no one violated defendant's confidentiality by executing the duty to warn because defendant's statements created legitimate concern for the safety of the [four] individuals who were warned." *Oliver*, 8th Dist. Cuyahoga No. 90880, 2009-Ohio-228, at ¶ 36. R.C. 2317.02(L)(3)(b) exempts from "privileged communications" any "communication made by a client to an employee assistance professional that reveals the contemplation or commission of a crime or serious, harmful act." We recognize that mental-health professionals are allowed discretion

when determining whether to breach their duty of confidentiality in order to execute their duty to warn. *Id.*

{¶ 16} Therefore, we sustain Merriman's first assignment of error.

{¶ 17} Finding merit in the first assignment of error, we do not find it necessary to address the second and third assignments of error, which are moot. App.R. 12(A)(1)(c).

{¶ 18} Defendant's conviction and sentence are vacated.

It is ordered that appellant recover from appellee his costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
ANITA LASTER MAYS, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., CONCURS;
LISA B. FORBES, J., DISSENTS WITH SEPARATE OPINION


{¶ 19} I respectfully dissent from the majority's opinion and would instead find that the state produced sufficient evidence to support Merriman's retaliation convictions.

{¶ 20} R.C. 2921.05 governs criminal retaliation, and subsection (A) states as follows: "No person, purposely and by * * * unlawful threat of harm to any person or property, shall retaliate against a public servant, * * * or an attorney or witness who was involved in a civil or criminal action or proceeding because the public servant, * * * attorney, or witness discharged the duties of the public servant, * * * attorney, or witness."

{¶ 21} R.C. 2901.22(A) defines purposely as follows: "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." Although Merriman was suffering from mental-health issues at the time he made the threats, there is no evidence in the record to suggest that he was unable to form criminal intent. Rather, the testimony showed that Merriman intended to threaten three police officers and a judge.

{¶ 22} At trial, the parties conceded that the three identified police officers and the judge were "public servants" under R.C. 2921.02(A). The phrase from R.C. 2901.22(A) "who was involved in a civil or criminal action or proceeding" does not apply to public servants. Therefore, the elements of retaliation applicable in the case at hand are: "No person, purposely and * * * by unlawful threat of harm to any person or property, shall retaliate against a public servant * * * because the public servant * * * discharged the duties of the public servant * * *."

The legislature intended R.C. 2921.05(A) to prohibit retaliation against three categories of individuals: (1) the public servant, (2) the party official, or (3) the attorney or witness who was involved in a civil or criminal action or proceeding. The placement of the comma before "or an attorney or witness" in the context of this sentence clearly establishes the third category of potential victims of retaliation encompasses attorneys or witnesses who were involved in civil or criminal actions or proceedings. The use of "or" before the word attorney would be superfluous if the phrase "who was involved in a civil or criminal action or proceeding" was meant to modify each category.

*State v. Matthews*, 5th Dist. Fairfield No. 12-CA-35, 2013-Ohio-2183, ¶ 11. *See also* 3 OJI-CR 521.05(1) (instructing the jury that the recipient of a threat under a retaliation charge must be "a (public servant) (party official) ([attorney] [witness] who was involved in a [civil] [criminal] action or proceeding) because the (public servant) (party official) (attorney) (witness) discharged his/her duties"). Where the threat of retaliation is against a public servant, that public servant need not have been involved in a civil or criminal proceeding for the state to establish each element of a violation of R.C. 2921.05(A).

{¶ 23} The parties' stipulation that police officers and judges are public servants is supported by statute. R.C. 2921.01(B)(1) states that a "[p]ublic servant" includes a "public official." R.C. 2921.01 (A) defines "[p]ublic official" as follows: "any elected or appointed officer, or employee, or agent of the state or any political subdivision [including] legislators, judges, and law enforcement officers." Merriman identified various individuals who he targeted. Specifically as to this case, he told the medical staff "that he plans to kill six cops * * *, three of which he was able to name during the interview." Additionally, although Merriman did not

initially recall the judge's name, he knew the judge was female and that she presided over his fiancée's case. Ultimately, the judge's name was established.

{¶ 24} The state presented evidence that the police officers and the judge were discharging their duties, which prompted Merriman's threats. Merriman repeatedly threatened to kill three specific Cleveland Police Officers because he thought the officers "picked on him" after he was acquitted on a charge of intervening in a police raid. Additionally, he repeatedly threatened to "scare" the judge by creating an explosion because she presided over his fiancée's criminal case.

{¶ 25} According to the medical records, for the past year Merriman had spent "countless hours ruminating over plans to kill people that have done him wrong." Dr. Kimmel testified that the "[p]rimary targets seem to be law enforcement and public officials who he feels have had it out for him * * *." Merriman's medical records reveal that he claimed to know who the police officers and the judge are, "where they live, what their spouses and children look like, what car they drive, and other information that 'you couldn't even imagine.'" As noted by the majority, Merriman told his psychiatrist that he would follow these people to their homes from public places and would dress up in wigs and hats to disguise himself. Dr. Kimmel testified that, according to Merriman's medical records, he made these threats from September 17, 2018, to September 30, 2018, two days before his release from the hospital.

{¶ 26} Merriman identified by name three Cleveland Police Officers who he "felt that they had sort of picked on him when he was on the streets that he was

found not guilty on a certain charge." Asked if "these individual officers who he believed he encountered in the course of their duties were picking on him," Dr. Kimmel answered, "Yes." Asked if Merriman "spoke specifically about killing officers," Dr. Kimmel answered, "Correct. * * * He continues to endorse that he is not afraid of going to jail or dying, because in his mind, he would be a martyr. He described it as a win-win if he died after killing the police officers because he would be done with the suffering." Dr. Kimmel testified that during "the 14 days preceding the 30th [of September 2018], he's making these threats to — about the judge * * * and he wants to scare her."

{¶ 27} In light of the facts presented at trial, I would find that this case is distinguishable from *Oliver*, 8th Dist. Cuyahoga No. 90880, 2009-Ohio-228. In *Oliver*, dismissing the charges against the defendant, the court explained "for purposes of establishing a felony conviction for retaliation, which does not include 'contemplation' of committing harm as an element of the offense, there should be a distinction between what a person says they want or feel like doing rather than what they say they intend to or will do." *Id.* at ¶ 36. The defendant in *Oliver* told treating professional that he wanted to beat to a pulp the judge, the prosecutor, and certain unnamed police officers. In contrast, Merriman told treating professionals that he had been following the judge and three police officers, knew where they lived, knew what their families looked like, and had plans to harm all four. The evidence presented against Merriman was more than his wants or desires.

{¶ 28} Accordingly, I would find that Merriman's convictions are supported by sufficient evidence in the record, and I would affirm the trial court's judgment.